UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Susan Fifield

     v.                       Civil No. 11-cv-201-JL
                                   Opinion No. 2012 DNH 176
HM Life Insurance Co. et al.

O R D E R

    This case arises out of an employee's claim for disability benefits due to abdominal pain, depression, and anxiety. Plaintiff Susan Fifield brought suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against her disability insurer, HM Life Insurance Co. ("HM Life"), its former claims administrator, Broadspire Services Inc. ("Broadspire"), and its current claims administrator, Aetna Life Insurance Co. ("Aetna"), each of which terminated or upheld the decision to terminate her long term disability benefits. She asks this court to overturn the decision and award her benefits under her employer's long term disability plan. See id. § 1132(a)(1)(B). The defendants argue that the record fails to establish that Fifield was disabled from performing her job, as required to qualify for long term disability benefits. This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (ERISA).

Both sides have moved for judgment on the administrative record, see L.R. 9.4(c), and have summarized it in a joint statement of material facts, see L.R. 9.4(b).  After oral argument and a careful review of the record, judgment is granted for Fifield because the record shows that the defendants' decision to terminate her long term disability benefits was arbitrary and capricious.  Specifically, the administrative record does not support the decision to terminate Fifield's benefits as of October 26, 2005, because the defendants simultaneously authorized benefits for a period prior to that date based on the same medical records.  Accordingly, as explained in detail infra, the defendants' decision bears no reasonable relation to the medical evidence in the administrative record, and was not reasoned or supported by substantial evidence.

## I.   Applicable Legal Standard

The standard of review in an ERISA case differs from that in an ordinary civil case, where summary judgment is designed to screen out cases that raise no trialworthy issues.  See, e.g., Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005).  "In the ERISA context, summary judgment is merely a vehicle for deciding the case," in lieu of a trial.  Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006).  Rather

than consider affidavits and other evidence submitted by the
parties, the court reviews the denial of ERISA benefits based
"solely on the administrative record," and neither party is
entitled to factual inferences in its favor. Id.  Thus, "in a
very real sense, the district court sits more as an appellate
tribunal than as a trial court" in deciding whether to uphold the
administrative decision. Leahy v. Raytheon Co., 315 F.3d 11, 18
(1st Cir. 2002).

## II. Background

For more than eleven years, Fifield worked at Comcast Cable
Corporation, Inc. ("Comcast") and its predecessor companies as a
customer service representative, a sedentary job that involves
frequent interaction with customers.  As a Comcast employee,
Fifield was eligible for and participated in the company's long
term disability insurance plan (the "Plan"), offered through
defendant HM Life, which provides up to two years of benefits for
a disability resulting from or caused by mental illness or a
"self-reported condition."

To receive benefits under the Plan, an employee must be
certified as disabled by the Plan's claims administrator
(originally Broadspire and, later, Aetna).  The Plan defines
disability as a "change in your functional capacity to work as a
result of your Medical Condition."  To receive benefits for the

3

first twelve months of disability, an employee must have a disability that "prevents [her] from performing the Essential Functions of [her] Regular Occupation."

Fifield also participated in Comcast's Short Term Disability Insurance Plan, also offered through HM Life and, for the relevant time period, administered by Broadspire.  In early 2005, Fifield applied for short term disability benefits ("STD benefits") because of abdominal pain, depression, and anxiety, all of which she had suffered from and sought medical treatment for over the previous several years.  Fifield stopped going to work on March 17, 2005.  Broadspire authorized STD benefits for Fifield effective March 24, 2005.[1]

Shortly after Broadspire authorized STD benefits, Fifield underwent an endoscopy to determine the cause of her abdominal pain.  Dr. Noboru Murakami, who performed the procedure, noted in his report that it revealed "acute and chronic gastritis" and "Barrett's esophagus."  Over the next few months, while out of work and receiving STD benefits, Fifield saw Dr. Ethel Hull, a psychologist, numerous times.  Dr. Hull opined in June 2005 that Fifield was then suffering from a "[s]ignificant decline of

---

[1]The parties' joint statement of material facts stipulates that Fifield was out of work intermittently and received STD benefits prior to 2005 for the same medical issues, but does not provide any specifics as to dates.

health in response to high stress."  Dr. Hull further concluded that Fifield was unable to return to work because of her reaction to work-related stress.

By letter dated September 13, 2005, Broadspire notified Fifield that it had denied her request for continued STD benefits effective September 2, 2005.  In the letter, Broadspire wrote that the medical information it had received was "insufficient to support ongoing [STD benefits] as it did not provide any updated abnormal examination findings or diagnostic test results to support continued disability."  The letter further stated that to continue benefits, Fifield "must submit information that would support a functional impairment.  This information may include observable findings that demonstrate a functional deficit in behavioral, emotional and/or cognitive functioning, the results of a formal mental status examination, and/or the results of psychological based testing with standardized scores."

Subsequently, in October 2005, Fifield saw Dr. Michael Vanaskie, a psychologist, who "agreed to conduct [an] evaluation to meet [the] requirements" set forth in Broadspire's letter. Dr. Vanaskie interviewed Fifield over two days and conducted two common diagnostic tests:  the Millon Clinical Multiaxial Inventory - 3rd Edition ("MCMI-3") and the Minnesota Multiphasic Personality Inventory - 2nd Edition ("MMPI-2").  In his

subsequent evaluation, dated November 9, 2005, Dr. Vanaskie opined that Fifield fit the profile of patients who "somaticize their emotional distress and develop physical symptoms," and that with these types of patients, "psychological stress . . . is often converted into physical symptoms which often times take the form of insomnia, fatigue, or gastrointestinal distress."  Dr. Vanaskie concluded that Fifield "suffer[s] from a functional impairment that significantly impairs her ability to function as she did in the past" and that "Fifield is unable to return to her former employment environment."

Fifield appealed Broadspire's denial of her STD benefits on December 5, 2005, supporting her claim with a copy of Dr. Vanaskie's psychological evaluation.  Fifield also provided recent office notes from Drs. Murakami and Hull, as well as the results of a colonoscopy which revealed "sigmoid diverticulosis" and a "colonic polyp at the midsigmoid colon."

On December 7, 2005, two days after Fifield appealed the denial of her STD benefits, she submitted a claim for long term disability benefits ("LTD benefits").  To support her claim, Fifield submitted all of her medical records from 2005, including the documents she had provided in support of her appeal of Broadspire's denial of her STD benefits.

6

By letter dated December 27, 2005, Broadspire notified
Fifield that, based on the additional medical records she
submitted in her appeal, it had reinstated her STD benefits
effective September 1, 2005, until September 26, 2005, the final
date Fifield was eligible to receive those benefits.

By letter dated February 22, 2006, Broadspire notified
Fifield that, based on the medical records she submitted, it had
authorized LTD benefits from September 27, 2005, through October
25, 2005.  The letter stated that "while the medical records do
support your disability from September 27, 2005 through October
25, 2005, based upon the available information, the medical
records fail to support disability from October 25, 2005 to
present."  The letter offered no details as to why Fifield's
medical records failed to support a disability after that date.

Fifield appealed Broadspire's denial of her LTD benefits on
March 20, 2006.  In support of her appeal, Fifield submitted
updated medical records from Dr. Hull.  These records included an
outpatient treatment report dated January 2, 2006, in which Dr.
Hull noted that she had seen Fifield eighteen times over the
previous year, and that Fifield's "diverticulitis is
significantly exacerbated by stress," including stress from her
workplace.  In addition, Fifield submitted a behavioral clinical
report from Dr. Hull, dated February 27, 2006, in which she

7

opined that Fifield was unable to perform the essential duties of any job, including those of a customer service representative, because of high stress which exacerbates her stomach ailments.

By letter dated May 15, 2006, Broadspire notified Fifield that it had denied her appeal and upheld the original decision authorizing LTD benefits through October 25, 2005, only.[2]  In the letter, Broadspire listed the medical records and other information it had received and explained that the information was "reviewed by independent peer physicians specializing in Psychology and Gastroenterology."  The letter stated that

> the submitted documentation lacked sufficient medical evidence (i.e., documentation of abnormal physical examination findings, abnormal diagnostic test results such as laboratory reports, documentation of the presence of impairments such as behavioral observations including the frequency, duration and intensity of symptoms observed, the results of a formal mental status examination, performance based tests of cognitive functioning, etc.) to substantiate significant impairments in functioning that would have prevented you from performing the essential functions of your regular occupation.

In listing the materials reviewed in making this determination, however, the letter omitted several medical records for the period between August 2005 and January 2006, including Dr.

---

[2]Although the letter was authored by Broadspire, it indicated that the final decision on Fifield's appeal was made by HM Life's "Appeal Committee."

Vanaskie's report or his diagnostic tests and the results of Fifield's colonoscopy.

Fifield brought an ERISA action against the defendants in Merrimack Country Superior Court about three years later, challenging their termination of her LTD benefits.  The defendants removed the case to this court.  See Fifield v. HM Life Ins. Co. et al., No. 09-cv-176-JM (D.N.H. Apr. 14, 2009). The court remanded the case to the claims administrator because the defendants conceded that the administrative record upon which the claims administrator based its decision did not contain all the relevant medical records.  Order dated September 25, 2009 (Muirhead, M.J.).

After the case was remanded, Aetna, which had succeeded Broadspire as the Plan's claims administrator, upheld the original decision to terminate Fifield's LTD benefits.  In a letter to Fifield dated April 16, 2010, Aetna explained that HM Life's Appeal Committee "determined that there was a lack of clinical evidence (objective medical evidence of functional impairment) to support [her] inability to perform the essential functions of a Customer Service Representative, as of 10/26/05." The letter stated that Fifield's "file was reviewed by independent peer physicians specializing in Internal Medicine and

Psychology," both of whom supported the decision.[3]  This action
followed.

## III. Analysis

Fifield argues that her challenge should be reviewed de novo
because the Plan does not give the defendants discretionary
authority to determine eligibility for benefits.  She further
argues that, under either the de novo standard or the deferential
standard, she is entitled to judgment because the defendants'
termination of her LTD benefits is unsupported by the medical
evidence in the administrative record and arbitrary and
capricious.  The defendants argue that the Plan grants them
discretionary authority to determine eligibility for benefits so
their decision must be upheld unless it was arbitrary and
capricious, which it was not.  They further argue that even if
the court uses the de novo standard on review, the termination of
Fifield's benefits is supported by the administrative record in
any event.

As fully explained infra, the Plan clearly grants the
defendants discretionary authority to determine eligibility for
benefits.  Therefore, the court agrees with the defendants that
their decision to terminate Fifield's LTD benefits is entitled to

---

[3]The two peer physicians were Dr. Wendy Weinstein (internal
medicine) and Dr. Elena Mendelssohn (psychology).

10

deferential review, so that it must be upheld unless it was arbitrary and capricious.  The court agrees with Fifield, however, that the decision was arbitrary and capricious. Specifically, the decision to terminate Fifield's LTD benefits as of October 26, 2005, based on the same medical records upon which the defendants authorized benefits for the period prior to that date, is not supported by the record evidence, and the defendants do not offer any explanation for how the same records could produce opposite decisions.  Therefore, the defendants' motion for judgment is denied and Fifield's motion for judgment is granted.

**A.   Deferential or de novo review**

A case challenging the denial or termination of benefits under ERISA is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 11 (1st Cir. 2003); Brigham v. Sun Life of Canada, 317 F.3d 72, 80 (1st Cir. 2003).  If the benefit plan gives the administrator discretionary authority, "the administrator's decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion." Wright v. R.R. Donnelley & Sons Co. Group Benefits

Plan, 402 F.3d 67, 74 (1st Cir. 2005).  To trigger the arbitrary
and capricious standard, "the grant of discretionary authority
must be clear."  Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir.
1998); see also Rodriquez-Abreu v. Chase Manhattan Bank, N.A.,
986 F.2d 580, 583 (1st Cir. 1993).

   The defendants point to two clauses in the Plan which they
claim clearly grant them discretionary authority.  The first is
Part 9, "Termination of Benefits," subpart 6, which states, "[LTD
benefits] terminate on . . . [t]he date you fail to provide
written proof of your disability that we determine to be
satisfactory."  The second is Part 14, "Claims Procedures and
Provisions for Benefits," subheading E, "When Benefits Are Paid,"
which states, "[w]hen we determine that proof of your claim is
satisfactory, benefits will be paid at the end of each month
during which LTD Benefits are payable."  The defendants contend
that both clauses suggest that proof of disability must be
satisfactory to them, and therefore, give them discretion to
determine whether a claimant is eligible for benefits.

   The First Circuit has held that language in a benefits plan
that suggests that proof must be satisfactory to the claims
administrator is sufficient to convey discretionary authority.
See Brigham, 317 F.3d at 81 (adopting the view that language such
as "'to us' after 'satisfactory' [is] an indicator of subjective,

discretionary authority on the part of the administrator,
distinguishing such phrasing from policies that simply require
'satisfactory proof' of disability, without specifying who must
be satisfied"); see also Figueiredo v. Life Ins. Co. of N. Am.,
709 F. Supp. 2d 137, 144 (D.R.I. 2010) (language sufficient to
trigger the arbitrary and capricious standard "require[s] an
indication that proof of disability must not only be
satisfactory, but that it must be satisfactory *to the
administrator*").   Therefore, the language pointed to by the
defendants is a sufficient grant of discretionary authority.
Fifield contends that this language is insufficient, arguing that
a grant of discretionary authority must be provided in a specific
portion of the benefits plan or be prominently displayed, but she
has not cited, and the court is not aware of, any case in this
circuit that imposes that requirement.   Accordingly, the court
will apply the deferential standard of review.

**B.   Whether the defendants' decision was arbitrary and
      capricious**

Fifield argues that she is entitled to benefits because the
medical evidence demonstrates that since at least September 27,
2005, the date as of which the defendants authorized her LTD
benefits, her stomach pain, depression, and anxiety prevented her
from working as a customer service representative.   Despite this

13

determination, the defendants simultaneously nevertheless terminated her benefits as of October 26, 2005, because, in their view, the medical evidence failed to establish that her ailments prevented her from working as a customer service representative, which requires only sedentary work, as of that date.  The court concludes that this decision was arbitrary and capricious.

Under the arbitrary and capricious standard, the court can overturn the defendants' termination decision only if it finds "that the insurer's eligibility determination was unreasonable in light of the information available to it." Cooke v. Liberty Life Assur. Co. of Boston, 320 F.3d 11, 19 (1st Cir. 2003); see also Wright, 402 F.3d at 74 (the court must decide "whether the aggregate evidence . . . could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits").  The standard is "generous" to the administrator, but "is not a rubber stamp." Wallace v. Johnson & Johnson, 585 F.3d 11, 15 (1st Cir. 2005).  A decision to deny or terminate benefits will be upheld so long as it was "reasoned and supported by substantial evidence." Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009).  "Evidence is substantial if it is reasonably sufficient to support a conclusion." Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008). "Evidence contrary to an administrator's decision does not make

14

the decision unreasonable, provided substantial evidence supports

the decision." Wright, 402 F.3d at 74.

The parties' arguments focus entirely on whether the

administrative record supports a finding that Fifield was

disabled, as the term is defined under the Plan, as of October

26, 2005.  In other words, the parties approach this case as if

Fifield simply applied for LTD benefits and the defendants denied

her claim.  But that is not what happened.  Instead, Fifield

applied for LTD benefits, the defendants approved her claim and

authorized benefits for a one-month period, and in the very same

decision, and based on the very same evidence, the defendants

found she was not eligible for LTD benefits beyond that date.

That is, the defendants reviewed Fifield's medical records and

determined that they supported a finding of disability from

September 27, 2005, through October 25, 2005.  At the same time,

the defendants determined that the same medical records did not

support a finding of disability after October 25, 2005.

Courts disagree as to the level of proof required to sustain

a plan fiduciary's decision to terminate disability insurance

benefits after they have been granted.  Some courts have held

that there must be only substantial evidence that the claimant

was not disabled at the time of termination, and therefore no

evidence that the claimant's condition improved from the time the

15

plan fiduciary initially authorized benefits is necessary. See
Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 273-74
(5th Cir. 2004) ("[a] plan fiduciary that has granted plan
benefits to a participant or beneficiary is not estopped from
terminating those benefits merely because there is no evidence
that a substantial change in the covered employee's medical
condition occurred after the original grant of benefits");
Nicolai v. Aetna Life Ins. Co., No. 08-CV-14626, 2010 WL 2231892,
at *6 (E.D. Mich. June 3, 2010) ("[o]nce a claimant is no longer
able to prove disability under the policy terms, benefits are no
longer payable"); Lewis v. CNA Group Life Assur. Co., 414 F.
Supp. 2d 652, 658-59 (S.D. Miss. 2006) ("it need only appear from
the record at the time benefits were discontinued, the evidence
supported a conclusion that the plaintiff did not meet the policy
definition of 'totally disabled'"); Hufford v. Harris Corp., 322
F. Supp. 2d 1345, 1360 (M.D. Fla. 2004) ("[a]s a result of the
payment of benefits, the plan [administrator] does not incur the
burden of showing a change in claimant's condition in order to
justify a termination of benefits; the claimant retains the
burden of proving continued disability").

Other courts, however, disagree and hold that substantial
evidence must support a plan fiduciary's decision to terminate
benefits in light of its initial finding of disability. See

16

Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d
863, 871 (9th Cir. 2008) ("MetLife had been paying Saffon long-
term disability benefits for a year, which suggests that she was
already disabled.  In order to find her no longer disabled, one
would expect the MRIs to show an improvement, not a lack of
degeneration"); McOsker v. Paul Revere Life Ins. Co., 279 F.3d
586, 589 (8th Cir. 2002) ("We are not suggesting that paying
benefits operates forever as an estoppel so that an insurer can
never change its mind; but unless information available to an
insurer alters in some significant way, the previous payment of
benefits is a circumstance that must weigh against the propriety
of an insurer's decision to discontinue those payments."); Walke
v. Group Long Term Disability Ins., 256 F.3d 835, 840 (8th Cir.
2001) ("Nothing in the claims record justified [the
administrator's] decision that a change of circumstances
warranted termination of the benefits it initially granted.");
Nolan v. Heald Coll., 745 F. Supp. 2d 916, 936 (N.D. Cal. 2010)
("a plan administrator is required to explain <u>why</u> it believes a
claimant's submitted medical evidence is inadequate, beyond the
mere conclusion that it is").

Our Court of Appeals has suggested that the latter approach
is appropriate.  In Cook, the claimant challenged the termination
of her LTD benefits, which the defendant had authorized and been

17

paying for more than three years.  See Cook, 320 F.3d at 17-18.
The defendant, after conducting a regular review of the
claimant's file, determined on subsequent review that the same
medical evidence which had supported awarding benefits, no longer
supported that finding.  Id. at 16-17.  The Court of Appeals
held, under the arbitrary and capricious standard, that where the
claimant "provided the same type of evidence she had always
proffered to prove her claim," i.e., her treating physician's
"medical opinion, backed up by his chart notes," the plan
administrator was not justified "[i]n changing course" and
reversing its "previous acceptance" of the same doctor's opinion.
Id. at 23.  In other words, "the First Circuit concluded that the
insurer's decision to terminate Cook's disability benefits was
'arbitrary and capricious' because in so doing, it rejected the
unwavering opinion of her treating physician that she was
'totally disabled' and 'should be kept out of work indefinitely'
without developing 'any contradictory medical evidence in the
record to support its decision to reject Cook's evidence.'"
Keough v. Liberty Life Assur. Co. of Boston, No. Civ. 03-266-PB,
2005 WL 428581, at *13 (D.N.H. Feb. 24, 2005).

As in Cook, the defendants in this case determined that
Fifield was not disabled based on the same medical records that
they deemed sufficient to support her disability.  Further, in

18

this case, the defendants made the contradictory findings at the
same time rather than changed course through a later review, as
in Cook.  The defendants have not cited, and the court is not
aware of, any case where the defendants, in one decision,
authorized LTD benefits through a date certain--but not beyond--
without any explanation or justification for why the same medical
records supported disability on one day but not the next.

That is the case here.  The defendants determined that
Fifield's medical records supported a finding of disability until
October 25, 2005, but not after.  The letter to Fifield informing
her of the decision, however, did not explain why the records
supported Fifield's disability through October 25, 2005, but not
on October 26, 2005, or after.  Nor does the administrative
record reveal any change in Fifield's condition as of that date,
or prognosis (or any other reason to believe) that her condition
was ever expected to improve around that time so that she would
no longer be disabled.[4]  Accordingly, the decision to terminate

---

[4]The only reference in the administrative record to medical
evidence pertaining to October 25, 2005, is Dr. Murakami's
"History and Physical report from Franklin Regional Hospital,"
which was discussed briefly in Dr. Weinstein's physician review
and listed in the materials reviewed by the defendants and Dr.
Mendelssohn after the case was remanded.  The report notes, among
many things, that Fifield suffered from a history of esophageal
reflux but that medication had helped to control the issue.  The
defendants have not argued that their decision to terminate
benefits was related to Dr. Murakami's October 26, 2005, report.
Indeed, the defendants' letters terminating Fifield's STD

Fifield's benefits as of October 26, 2005, was not reasoned or supported by substantial evidence.[5]

The defendants' termination decision is further undermined by the fact that the record supports a finding of disability more strongly after October 25, 2005, than before it.  For example, Dr. Vanaskie, whose report is dated November 9, 2005, performed two psychological tests, the MCMI-3 and MMPI-2, the results of which supported Fifield's claim that she was unable to perform the essential functions of her job as a customer service representative.  Although the defendants' peer reviewer, Dr. Mendelssohn, largely disregarded the results of these tests, both are considered to be reliable, objective methods of diagnosing psychological disorders.  See Nowlin v. Comm'r, SSA, No. CV 08-00209-N-REB, 2009 WL 700128, at *8 (D. Idaho Mar. 16, 2009) (the MCMI-3 is "designed to assess . . . personality disorders and clinical syndromes"); United States v. Hughes, Cr. No. 07-125-P-

---

benefits and LTD benefits suggest that her disability is based on psychological issues.  Counsel for the defendants agreed with that point during oral argument.

[5]The defendants do not argue that they erred in authorizing Fifield's LTD benefits until that date.  They maintain, as they stated in their letter terminating Fifield's claim and subsequent letters denying her appeal, that the medical records were sufficient to support a finding of disability before October 26, 2005, but not beyond.  Indeed, they reaffirmed this decision even after the case was remanded so the claims administrator could again conduct a review of Fifield's medical records and consider additional information.

H, 2008 WL 2704849, at *4 (D. Me. July 8, 2008) (describing the MMPI-2 as "a reliable tool well-accepted in [the] field of clinical psychology"); United States v. Wilson, 493 F. Supp. 2d 348, 351 n.2 (E.D.N.Y. 2006) (the MMPI-2 is a "widely used written psychological assessment used to diagnose mental disorders"); Raposo v. United States, No. 01 Civ. 5870(DAB), 98 CR. 185(DAB), 2004 WL 1043075, at *5 (S.D.N.Y. May 7, 2004) (the MCMI-3 is "a standard test to assess personality structure and to assess the presence of psychopathology or mental illness"). Indeed, the results of these tests would seem to be precisely the kind of "diagnostic test results" the defendants had deemed sufficient in their May 15, 2006, letter.

Moreover, while the defendants argue that the opinions of Fifield's treating physicians are based largely on self-reported complaints, the MMPI-2 is specifically designed to determine whether the patient's self-reporting is accurate. See United States v. Northington, Criminal Action No. 07-550-05, 2012 WL 4024944, at *4 (E.D. Pa. Sep. 12, 2012) ("[c]ourts have recognized that the MMPI-II is a test that is sometimes utilized to assess malingering"); Maestas v. Astrue, No. EDCV 10-1218 AJW, 2011 WL 5827959, at *4 (C.D. Cal. Nov. 17, 2011) ("The MMPI-2 also contains an elaborate built in mechanism to detect malingering") (internal quotation marks and citation omitted).

21

Dr. Vanaskie did not note any evidence of malingering and relied on the results of the MMPI-2 in reaching his conclusion.[6] Therefore, Dr. Vanaskie's evaluation, which was dated about two weeks after the defendants found Fifield no longer eligible for LTD benefits, further supports her claim that their decision was arbitrary and capricious.

In short, the defendants' termination decision was at odds with Fifield's medical records and was therefore unsupported by substantial evidence.  Moreover, the defendants have not adequately explained--or explained at all--the basis of their determination that Fifield's medical records support a finding of disability until October 25, 2005, but not afterward.  Their decision was therefore arbitrary and capricious and is overturned.

---

[6]As stated above, Dr. Vanaskie noted that Fifield fit the profile of patients who "somaticize their emotional distress and develop physical symptoms."  Somatization, however, represents "transforming psychological problems into physical medical problems," while malingering is "feigning symptoms for external gain."  Margheim v. Astrue, NO. CV-09-1184-SU, 2011 WL 802705, at *4 (S.D. Ohio Mar. 29, 2011); see also Welch v. Astrue, No. 4:10CV02005 HDY, 2011 WL 4402951, at *3 n.4 (E.D. Ark. Sep. 22, 2011) (describing somatization as an actual or "factitious disorder" and malingering as "the fabrication or exaggeration of symptoms" of a disorder).

## IV.   Conclusion

For the foregoing reasons, Fifield's motion for judgment on the administrative record (doc. no. 14) is granted.  The defendants' motion for judgment on the administrative record (doc. no. 16) is denied.

The parties shall confer regarding the proper award of damages.  On or before **October 19, 2012,** the parties shall file either a proposed final judgment setting forth the specific benefits owed Fifield under the Plan and any further relief, or a joint motion for a status conference detailing the issues precluding the entry of final judgment in this matter.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 28, 2012

cc:  William D. Woodbury, Esq.
     David F. Schmidt, Esq.
     Andrew W. Serell, Esq.